IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY WYNDELL BLUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-378-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Terry Wyndell Blue requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2]   Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 18, 1963 and was forty-seven years old at the time of the administrative hearing. He earned a bachelor's degree and has past relevant work as a machine tender (Tr. 18). The claimant alleges that he has been unable to work since October 15, 2007, because of weakness in his legs and right knee and carpal tunnel syndrome (Tr. 150).

### Procedural History

The claimant applied on March 6, 2009 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Lantz McClain determined that the claimant was not disabled in a written opinion dated June 9, 2010 (Tr. 10-20). The Appeals Council denied review of this opinion, so the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.1481; 416.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a), but that claimant should not constantly use his hands for

repetitive tasks such as keyboarding (Tr. 13). While the ALJ found that the claimant was not capable of performing his past relevant work, the ALJ found that there was other work in the national economy that claimant is capable of performing, *i. e.*, order clerk and semiconductor assembler (Tr. 19).

## Review

The claimant contends that the ALJ erred: i) by failing to perform a proper step three analysis with regard to Listing 1.04; and ii) by failing to properly analyze the claimant's credibility. The Court finds the claimant's first contention persuasive.

In June 2007, the claimant presented at W.W. Hastings Indian Medical Center ("Hastings") with complaints of tingling in his right and left hands (Tr. 233). Radiology reports show that he was diagnosed with mild degenerative arthritic changes at C6-C7 with neural foraminal encroachment (Tr. 233). The claimant was diagnosed with bilateral carpal tunnel syndrome with entrapment of the median nerves in both wrists in September 2007 based on EMG results (Tr. 216). As a result, the claimant underwent surgery to address carpal tunnel syndrome on his right side in December 2007 (Tr. 200). Because that surgery was not successful, the claimant opted to forego receiving surgery on his left side, as he is left-hand dominant (Tr. 33). The claimant reports that he still experiences problems with both of his hands as a result of carpal tunnel syndrome (Tr. 33). In December 2008, the claimant was purportedly hit by lightning while holding a box of nails. On April 8, 2009, the claimant presented at Hastings with complaints of numbness and weakness in his back along with bilateral weakness in his legs that had

been ongoing for six-seven months (Tr. 251). At that time, the claimant reported that his legs "drag and don't work like they used to" (Tr. 251). The impression was that claimant had grade 1 anterior spondylolisthesis of L5 on L4 without evidence of spondylolysis and mild disk space narrowing at L4-L5 (Tr. 252). At a follow-up appointment with Dr. Jack E. Weaver, M.D. on June 10, 2009, the claimant was informed of an abnormal EMG study which suggested that the claimant had a chronic right L5 radiculopathy which was at least nine months old (Tr. 269). Dr. Weaver then sent the claimant for an MRI to evaluate the cause of his right leg and lower back pain, which revealed a diagnosis of a herniated nucleus pulposus in his lumbar spine (Tr. 267). On July 1, 2009, Dr. Weaver found that the claimant had tenderness in the lumbar paravertebrals and had diminished reflexes in the patella and Achilles bilaterally (Tr. 270).

Although the claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986). However, "a court [can] still affirm an ALJ's decision – despite the ALJ's failure to make specific step three findings – when 'confirmed or unchallenged findings made elsewhere in the ALJ's decision [i.e., at steps four and five]'

'conclusively preclude Claimant's qualification under the listings at step three' such that '[n]o reasonable factfinder could conclude otherwise.'" *Henderson v. Astrue*, 383 Fed. Appx. 700, 701 (10th Cir. 2010), *quoting Fischer-Ross*, 431 F.3d at 734-35.

In this case, the ALJ's analysis at step three mentions Listing 1.04, and then states that the ALJ "finds that the claimant's impairments do not meet or equal the criteria established for an impairment shown in the Listings of Impairments in Appendix 1, Subpart P, and Regulations No. 4." (Tr. 13). The ALJ, however, failed to *explain* his conclusion at step three, and unlike in *Fischer-Ross*, the ALJ's findings at step four and step five, along with the medical evidence of record, are not such that no reasonable factfinder could conclude that the claimant does not satisfy the criteria for Listing 1.04.

Listing 1.04 requires a showing that the claimant is suffering from a disorder of the spine and also requires a showing of either of the following:

   A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-let raising test (sitting and supine); or
   B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
   C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imagining, manifested by chornic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

During his step four discussion, the ALJ mentioned medical evidence which showed that the claimant was experiencing numbness and weakness in his back and legs,

that the claimant complained to physicians about his legs dragging, and that the claimant told physicians that his legs were not working like they used to (Tr. 15, 251).  The ALJ also mentioned that the record supported the claimant's complaints of pain in his legs, and that the claimant had diminished reflexes at the patella and Achilles tendon bilaterally (Tr. 16, 17, 270).  Further, the ALJ wrote in his opinion that the medical evidence showed that the claimant had an antalgic gait where the claimant favored one leg over the other, and that the claimant complained of "pain with prolonged sitting, standing, and walking" (Tr. 17).  Finally, the medical evidence supports that the claimant was diagnosed with a herniated nucleus pulposus at L4-5 (Tr. 267, 270-72, 284-90).  The claimant, therefore, *did* present evidence that at least suggests that he might meet Listing 1.04, *i. e.*, evidence of motor loss, reflex loss, and at least one positive straight-leg raising test.  Further, when an ALJ discusses all of the evidence at once at step four, it is difficult for the Court to determine what evidence the ALJ relied upon to find that the claimant did not satisfy the criteria for Listing 1.04.  *See, e.g.*, *Bates v. Barnhart*, 222 F.Supp.2d 1252, 1258 (D. Kan. 2002) ("The ALJ also should have clearly indicated upon what evidence he was basing his step three determination.  He discussed all of the evidence at once, including the medical evidence and the evidence he used to make his credibility assessments.  Although the ALJ may make credibility assessments at steps four and five, determinations at step three must be made purely on the medical evidence.  Absent an assurance that the ALJ based his decision solely on the medical evidence, the court cannot conclude that the ALJ's step three analysis was proper.") [internal citations omitted].  In this case, the Court cannot determine that the ALJ's findings and the

medical evidence of record "conclusively negate the possibility . . . that Claimant is presumptively disabled under" Listing 1.04, *Fischer-Ross*, 431 F.3d at 735.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis at step three.

## Conclusion

In summary, the Court finds that the decision of the Commissioner is REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith.

**DATED** this 29th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma